UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THOMAS A. CALLAHAN, JAMES T. CALLAHAN,
MICHAEL SALGO, and WILLIAM TYSON, *in their
capacity as the Board of Trustees of the Welfare
Fund of the International Union of Operating
Engineers Local 15, 15A, 15C & 15D, AFL-CIO*,

                     Plaintiffs,

    *v.*

BERNARD PETOSA,

                    Defendant.
------------------------------------------------------------------X

**REPORT &
RECOMMENDATION**
20-CV-3482-RPK-SJB

**BULSARA, United States Magistrate Judge:**

This default judgment motion raises the question of whether the equitable relief provisions of section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA") permit a plan's trustees to recoup monies paid to third parties on the basis of misrepresentations made by the plan participant. The Court concludes that in the circumstances presented here—a trustee seeking to enforce plan terms as written and to recover monies never in the possession of the plan participant himself—the answer is no. Such an action is not equitable and does not fall within section 502(a)(3).

On August 3 2020, Plaintiffs Thomas A. Callahan, James T. Callahan, Michael Salgo, and William Tyson, in their capacity as the Board of Trustees of the Welfare Fund of the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("the Fund" and, collectively, "Plaintiffs"), commenced this action against Defendant Bernard Petosa ("Petosa") pursuant to section 502(a)(3) of ERISA,

29 U.S.C. § 1132(a)(3).[1]  Petosa has not appeared in the case.[2]  Plaintiffs allege that the Fund paid out benefits on behalf of Petosa's ex-wife and her children after his marriage was declared void and Petosa failed to inform the Fund about the end of his marriage, which extinguished any right of his family members to Fund benefits.[3]  Plaintiffs now seek to recoup $265,786.10 in medical benefits, paid on behalf of Petosa's former spouse and her children, from Petosa himself.  To do so, Plaintiffs moved for a default judgment against Petosa on October 7, 2020.[4]  The Honorable Rachel P. Kovner referred the motion to the undersigned for report and recommendation on October 8, 2020.[5]  For the reasons explained below, it is respectfully recommended that the motion be denied.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Local 15 Welfare Fund, administered from 44-40 11th Street, Long Island City, New York, is an employee welfare benefit plan and multi-employer/employee benefit plan under sections 3(1), 3(3), and 3(37) of ERISA, 29 U.S.C. § 1002(1), (3), (37). (Compl. ¶¶ 5–7).  Petosa is a member of the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("Local 15") and resides in Staten Island, New York. (*Id.* ¶ 8).  Petosa was a participant of the Fund.  (*Id.* ¶ 10).

---

[1] Compl. dated Aug. 3, 2020 ("Compl."), Dkt. No. 1, ¶¶ 38, 44.

[2] Certificate of Default dated Oct. 5, 2020 ("Certificate of Default"), Dkt. No. 7.

[3] *See* Compl. ¶¶ 18–33.

[4] Notice of Mot. for Default J. dated Oct. 7, 2020 ("Mot."), Dkt. No. 8.

[5] Order Referring Mot. dated Oct. 8, 2020.

An overview of the plan's terms of eligibility and coverage are contained in the Fund's Summary Plan Description ("SPD").[6] Coverage extends to a participant's lawful spouse and to unmarried stepchildren, under 19-years-old, so long as such stepchildren reside with the participant. (Compl. ¶ 12; SPD at E-13). If a participant and his or her spouse divorce, the SPD states that the plan participant must inform the Fund within 60 days, and the former spouse and any stepchildren are no longer eligible for coverage as of the date of divorce. (Compl. ¶¶ 13–14; SPD at E-12 ("If you and your spouse get divorced, your spouse will no longer be eligible for coverage as a dependent under this Plan effective as of the date the divorce is final. . . . In general, once you are divorced, stepchildren from your former marriage are no longer covered under the Plan[.]")). The SPD states that it is fraudulent for individuals to misrepresent their eligibility for coverage and an individual making such a misrepresentation may be required to repay the Fund for any benefits he or she received while ineligible. (Compl. ¶¶ 16–17; SPD at OPI-1 ("If you provide false information to the Plan or commit fraud, you may be required to indemnify and repay the Plan for any losses or damages caused by your false statements or fraudulent actions.")).

Petosa married Sally Jo Marconi ("Sally") on March 4, 1998. (Compl. ¶ 18). Sally had two children from a previous relationship, who became Petosa's stepchildren ("the stepchildren") after their marriage. (*Id.* ¶ 19). On May 31, 2012, Petosa and Sally's marriage was decreed *void ab initio* because Sally was already married; her prior spouse was still living, the marriage had not been annulled, and they had not divorced. (*Id.*

---

[6] Summ. Plan Description for the Welfare Fund of the International Union of Operating Engineers Local 15, 15A, 15C, 15D AFL-CIO ("SPD"), attached to Letter dated June 23, 2021, Dkt. No. 14.

¶ 20).  Thereafter, Sally and the stepchildren continued to receive benefits from the

Fund, and Petosa never informed the Fund about the change in his marital status.  (*Id.*

¶¶ 21–22, 28, 30, 32).

In July 2014, the Fund—after learning that Petosa was no longer married—asked

him to furnish a copy of his "divorce" decree.  (Letter dated July 11, 2014, attached as

Ex. E to Aff. of James M. Steinberg in Supp. of Mot. dated Oct. 7, 2020 ("Steinberg

Aff."), Dkt. No. 10-5).  Petosa responded, "there is no divorce decree because we are not

legally divorced[.]"  (Compl. ¶ 23; Letter dated July 16, 2014, attached as Ex. F to

Steinberg Aff., Dkt. No. 10-6).  In May 2020, Petosa, seeking "coronavirus[-]related

distribution money," told the Fund that he was single and provided the 2012 *void ab*

*initio* decree as proof.  (Compl. ¶¶ 25–26; Letter dated May 26, 2020, attached as Ex. G

to Steinberg Aff., Dkt. No. 10-7; J. Declaring the Parties' Marriage Void Ab Initio dated

May 31, 2012, attached as Ex. H to Steinberg Aff., Dkt. No. 10-8).

Plaintiffs commenced this action on August 3, 2020, asserting three causes of

action: enforcement of the plan terms (Count I) and equitable restitution of welfare

claim payments (Count II), both pursuant to ERISA section 502(a)(3), 29 U.S.C.

§ 1132(a)(3); and attorney's fees and costs pursuant to ERISA section 502(g)(1), 29

U.S.C. § 1132(g)(1).  (Compl. ¶¶ 34–46).  Petosa was served on August 21, 2020 when a

summons and a copy of the Complaint were left at his home with an individual

identifying herself as Sally Petosa and mailed to his home via first class mail.

(Summons Returned Executed dated Sept. 1, 2020 ("Summons Returned Executed"),

Dkt. No. 5 at 2).  Petosa failed to appear, answer, or otherwise respond to the Complaint.

Plaintiffs sought, (Req. for Certificate of Default dated Sept. 30, 2020, Dkt. No. 6), and

the Clerk of Court entered, a certificate of default, (Certificate of Default).

The motion for default judgment seeks $265,786.10 in reimbursement of medical claims paid for Sally and the stepchildren between May 31, 2012—when Plaintiffs claim they became ineligible—and May 26, 2020—when the Fund received the *void ab initio* decree. (Steinberg Aff. ¶ 10). Plaintiffs also seek $3,705.00 in attorney's fees and $500.00 in costs. (*Id.* ¶ 12).

DISCUSSION

## I.   Entry of Default

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. *Id.* r. 55(b)(2).

Here, the Clerk entered a default against Petosa on October 5, 2020. (Certificate of Default). Before reaching the question of liability or damages, the Court must next determine whether Petosa's conduct is sufficient to warrant entry of default judgment.

In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a

5

result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the failure by Petosa to respond to the Complaint demonstrates that his default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff's motion for default judgment). Petosa had sufficient notice of the present litigation because on August 21, 2020, a summons and a copy of the Complaint was left at 1161 North Railroad Avenue, Staten Island, New York with an individual identifying herself as Sally Petosa and mailed to the same address via first class mail. (Summons Returned Executed at 2). Plaintiffs allege that, upon information and belief, Petosa resides at this address. (Compl. ¶ 8; *see also* Steinberg Aff. ¶ 4). The motion for default judgment and all supporting papers were also served via U.S. mail to this same address, and Plaintiffs provided additional support to infer that Petosa indeed lived at this address. (Certificate of Service dated Oct. 7, 2020 ("Certificate of Service"), Dkt. No. 12; *see also* Pls.' Resp. to Order to Show Cause dated June 22, 2021, Dkt. No 13 (detailing Plaintiffs' basis for belief that Petosa resides at 1161 North Railroad Avenue, Staten Island)).

Notwithstanding this notice and service, Petosa did not respond to the Complaint, did not appear, and has not attempted to defend himself in this action, which constitutes a willful default. *See, e.g.*, *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in

any way.  Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness."); *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10-CV-5270, 2014 WL 294162, at *7 (E.D.N.Y. Jan. 23, 2014) (report and recommendation adopted) (finding affidavits that individual defendants had been properly served, including at their respective homes, were sufficient to find willfulness).

Second, the Court finds that there are meritorious defenses to Plaintiffs' allegations because, as explained below, Plaintiffs' claims do not fall within the equitable relief permitted under section 502(a)(3).  It would therefore be improper to enter a default judgment.  *C.f. Winn v. Ballet Makers, Inc.*, No. 87-CV-7286, 1996 WL 325610, at *1 (S.D.N.Y. June 12, 1996) (concluding "[b]ecause there are serious questions regarding . . . liability in this action, it would be inappropriate to enter a default judgment").

The Court does not reach the third factor in light of the fact that Plaintiffs have failed to establish that ERISA section 502(a)(3) permits a benefit plan's trustees to recoup monies in the circumstances presented here.

Because all three factors have not been satisfied, and for the reasons explained below, the Court respectfully recommends denial of the motion for default judgment.

II.    Equitable Relief Under ERISA Section 502(a)(3)

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016),

*report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016). "[E]ven after [a] default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Howarth v. FORM BIB LLC*, No. 18-CV-7047, 2020 WL 3441030, at *1 (S.D.N.Y. May 11, 2020) (quoting *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000), *report and recommendation adopted*, 2020 WL 3436685 (June 22, 2020); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2021).

The first two of Plaintiffs' causes of action—for enforcement and "equitable restitution"—are brought under ERISA section 502(a)(3). (Compl. ¶¶ 2, 38, 44).[7] Section 502(a)(3) provides a plan fiduciary like the Fund Trustees a means by which to seek equitable relief:

> A civil action may be brought—
>
> . . .
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29. U.S.C. § 1132(a)(3) (emphasis added). "[T]he term 'equitable relief' in § 502(a)(3) is limited to 'those categories of relief that were *typically* available in equity' during the days of the divided bench (meaning, the period before 1938 when courts of law and equity were separate)." *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S.

---

[7] The claim for attorney's fees and costs is brought under ERISA section 502(g)(1). (Compl. ¶ 46).

248, 256 (1993)).  Therefore, for Plaintiffs to assert a section 502(a)(3) cause of action, the remedy sought must be equitable.[8]

Whether a remedy "is legal or equitable depends on [both] 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (second alteration in original) (quoting *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994)).  Both are analyzed in turn, below.

A.  Basis of Plaintiffs' Claims

Here, Plaintiffs seek $265,786.10 in medical expenses "paid . . . on behalf of" Sally and the stepchildren after Petosa's marriage to Sally was voided *ab initio*.  (Compl. ¶¶ 28, 30, 32, 38, 44).  The claim is, at its core, an attempt to enforce the plan, which Plaintiffs allege required Petosa to inform the Fund about his change in marital status. (*Id.* ¶ 36).  Indeed, the first cause of action is titled "enforcement of plan terms," and the second, though titled "equitable restitution of welfare claim payments," seeks recoupment of monies by enforcing terms of the plan.  Notwithstanding Plaintiffs' labelling attempts, these are legal claims, not equitable ones.

When a plan beneficiary misrepresents the eligibility of his dependents, he "may be required to indemnify and repay" the plan for "any losses or damages[.]" (*Id.* ¶ 17 (quoting SPD at OPI-1)).  Such "a contractual obligation to pay money" is "relief that was not typically available in equity." *Knudson*, 534 U.S. at 210.  What Plaintiffs seek here is nothing other than "compensatory *damages*—monetary relief for all losses their

---

[8] A claim under section 502(a)(3)(A) is necessarily equitable, because injunctions are a prototypical equitable remedy.  And a claim under section 502(a)(3)(B) is by its own terms limited to "other appropriate equitable relief[.]"  29. U.S.C. § 1132(a)(3)(B).

plan sustained." *Mertens*, 508 U.S at 255. And because "money damages are . . . the classic form of *legal* relief," *id.*, such "[c]laims for money damages are therefore not cognizable under section 502(a)(3)," *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008).

*Knudson* illustrates the principle. There, following a car accident, the defendant Janette Knudson was covered for medical expenses under her husband's health care plan. 534 U.S. at 207. The plan benefits were principally paid out by an insurance company (Great West) that had contracted with the plan. *Id.* The plan contained a reimbursement provision that entitled it to recover any payment that a beneficiary, like Knudson, recovers from a third party. *Id.* And if the beneficiary recovers monies from a third party but fails to remit them to the plan, she was personally liable to the plan. *Id.* The plan assigned these rights of recovery to Great West, which sued Knudson to recover proceeds from a settlement she entered into (along with her husband) with the car manufacturer. *Id.* at 207–08. The Supreme Court held that the claim—that Great West was "contractually entitled" to "funds for benefits that they conferred"—was one for damages and, therefore, legal, not equitable. *Id.* at 214.

The present case sits in the same posture: a breach-of-contract claim for damages that is legal. Plaintiffs, the trustees of a benefit fund, have sued Petosa for breach of the SPD, namely his failure to update the plan about his change in marital status. And they seek to recover the damages they suffered as a result of his breach: the $265,786.10 the fund paid out in medical expenses on the behalf of individuals—Sally and the stepchildren—who were not entitled to them. Such a claim for damages—arising from the breach of a contractual obligation—is not equitable and cannot be brought pursuant to section 502(a)(3). *Id.* at 213–14, 218.

Plaintiffs make a series of arguments to support a contrary conclusion, but none have merit.

First, relying on *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), Plaintiffs contend they are seeking equitable relief because their claim is one that sounds in estoppel. (Mem. of Law in Supp. of Mot. dated Oct. 7, 2020 ("Mem."), Dkt. No. 11 at 8–9). Plaintiffs misapprehend the doctrine. In *CIGNA*, the Supreme Court resolved the inverse case from the present one: employee beneficiaries sued the fiduciary (the employer) for misrepresenting planned changes to their employee pension program, which originally required retirement compensation be paid out as an annuity (based on years of service and preretirement salary), to planned participants. *CIGNA*, 563 U.S. at 424, 428–32. CIGNA, the employer, chose instead to provide a lump-sum payment based on a different formula. *Id.* at 424, 426–27. The District Court found that CIGNA's failure to provide appropriate notice to plan participants violated ERISA; it reformed the plan and ordered CIGNA to pay out benefits as originally contemplated. *Id.* at 425. The Second Circuit affirmed by summary order. *Id.* at 434–35. The Supreme Court vacated the District Court's judgment and remanded the case. *Id.* at 445. In so doing, it found that the District Court's remedy—holding the ERISA fiduciary to the plan terms—was potentially a form of traditionally equitable relief: estoppel. *Id.* at 441. Estoppel, the Court explained, "operates to place the person entitled to its benefit in the same position he would have been in had the representations been true." *Id.* It remanded the case to the District Court to "revisit its determination of an appropriate remedy for the violations of ERISA it identified," and suggested the lower court explore the traditional equitable remedies of estoppel, reformation, or surcharge

available under section 502(a)(3) of ERISA, and identify which, if any, justified the result it reached. *Id.* at 425, 442–45.

Plaintiffs here, however, have not stated an estoppel claim.

Estoppel is a remedy intended to preserve "fair dealing" by "rebuk[ing] . . . all fraudulent misrepresentation." *Id.* (quotation omitted). There are two types of estoppel. *Equitable* estoppel is a "doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way." *Estoppel*, Black's Law Dictionary (11th ed. 2019). "The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 93 (2d Cir. 2003) (quoting *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001)). Equitable estoppel may be asserted as an affirmative defense in an ERISA case, *e.g.*, *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004) (noting that pension fund could potentially invoke equitable estoppel had plaintiff waited 11 years to challenge miscalculation of benefit payments), or as a claim by a plaintiff , *e.g.*, *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955–57 (9th Cir. 2014) (discussing requirements for plaintiff to bring equitable estoppel claim in context of ERISA); *Fortune v. Med. Assocs. of Woodhull, P.C.*, 803 F. Supp. 636, 642–44 (E.D.N.Y. 1992) (noting doctrine of equitable estoppel may be available to plaintiff to estop defendant from denying coverage); *see also Kosakow*, 274 F.3d at 725 ("The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an

injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.  Under federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment." (citation omitted)).

*Promissory* estoppel is "[t]he principle that a promise made without consideration may nonetheless be enforced to prevent injustice if the promisor should have reasonably expected the promisee to rely on the promise and if the promisee did actually rely on the promise to his or her detriment."  *Estoppel*, Black's Law Dictionary (11th ed. 2019).  "Promissory is distinct from equitable estoppel in that the representation at issue is promissory rather than a representation of fact.  Promissory estoppel and estoppel by conduct are two entirely distinct theories.  The latter does not require a promise."  *Id.* (quoting Ann Taylor Schwing, *California Affirmative Defenses* § 34:16 (2d ed. 1996)); *see also Aquilio v. Police Benevolent Ass'n of the N.Y. State Troopers*, 857 F. Supp. 190, 198 (N.D.N.Y. 1994) ("Equitable and promissory estoppel are two separate, albeit closely related theories of recovery[.]") (collecting cases).  To assert promissory estoppel under ERISA, "a plaintiff must plausibly allege five elements: '(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, . . . (4) an injustice if the promise is not enforced,' and (5) extraordinary circumstances."  *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 99–100 (2d Cir. 2020) (alteration in original) (quoting *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 172–73 (2d Cir. 2005)).

For either equitable or promissory estoppel, the Second Circuit requires the asserting party in ERISA cases to show "extraordinary circumstances."  *Paneccasio v.*

*Unisource Worldwide, Inc.*, 532 F.3d 101, 109 (2d Cir. 2008) (quoting *Devlin v. Transp. Commc'ns Int'l Union*, 173 F.3d 94, 101 (2d Cir.1999)). But "extraordinary circumstances" cannot exist if the promise or misrepresentation relied upon contradicts the plain terms of the ERISA plan. *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-CV-6551, 2016 WL 2939164, at \*5 (S.D.N.Y. May 19, 2016) ("[E]stoppel requires reasonable or justifiable reliance by the party asserting the estoppel. That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." (quoting *Riverview Health Inst. LLC v. Med. Mutual of Ohio*, 601 F.3d 505, 523 (6th Cir. 2010))); *Crocker v. S. Bell Tel. & Tel. Co.*, 887 F.2d 1078, at \*8 (4th Cir. 1989) ("[O]ral representations and promises of an employers' employees cannot estop an administrator or fiduciary from later denying a claimant's eligibility for benefits under the plain language of the governing plan documents.") (collecting cases). There must, instead, be some ambiguity in the ERISA plan. *Livick v. Gillette Co.*, 524 F.3d 24, 31 (1st Cir. 2008) ("[A] plan beneficiary might reasonably rely on an informal statement interpreting an *ambiguous* plan provision; if the provision is clear, however, an informal statement in conflict with it is in effect purporting to *modify* the plan term, rendering any reliance on it inherently unreasonable."). Or the promise or representation is extra-contractual, *i.e.*, it is not addressed by the plan at all. *Sullivan-Mestecky*, 961 F.3d at 96–97, 99–102 (finding promissory estoppel claim could proceed against plan administrator when its representatives made extra-contractual statements about the benefits to which plaintiff was entitled and plaintiff acted in reliance on such representations).

When a plaintiff seeks to enforce the clear and plain terms of an ERISA plan, there can be no estoppel claim. *Livick*, 524 F.3d at 31 ("[C]ourts which do recognize ERISA-estoppel do so only when the plan terms are ambiguous."). For example, when a plaintiff seeks benefits due under ERISA by enforcing plan terms, the claim does not sound in estoppel. *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir. 1989) ("[C]laims of promissory estoppel are not cognizable in suits seeking to enforce rights to pension benefits.").[9]

*Feifer v. Prudential Insurance Co.* helps explain the principle. There, plaintiffs, who were former employees of the *New York Daily News*, sued the paper's new owner and Prudential. 306 F.3d 1202, 1204 (2d Cir. 2002). Plaintiffs alleged that the defendants improperly reduced their long-term disability payments by the amount of their social security benefits or state worker's compensation benefits. *Id.* at 1207.

_____

[9] ERISA has a separate provision—section 502(a)(1)(B)—that permits a plan participant or beneficiary to sue for benefits due under a plan. 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . to recover benefits due to [a participant or beneficiary] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"). If such a claim is or could be pled, there is no right to equitable relief under section 502(a)(3). *E.g.*, *Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011) ("Biomed's Section 502(a)(3) claims would survive only if they sought relief that could not adequately be addressed by the relief available under Section 502(a)(1)(B). . . . In this case, since the gravamen of the three challenged ERISA claims is that Oxford failed to follow proper procedures in denying the Patient's claim for benefits, which resulted in an improper denial of benefits owed to the Patient under the terms of the Plan, adequate relief for these claims is plainly available under Section 502(a)(1)(B)."); *Staten Island Chiropractic Assocs., PLLC v. Aetna, Inc.*, No. 09-CV-2276, 2012 WL 832252, at *10 (E.D.N.Y. Mar. 12, 2012)("Although styled as requests for equitable relief, however, the plaintiffs are simply recasting their claims for the provision of benefits."). There is no comparative provision for fiduciaries, who may only sue for equitable relief. *Knudson*, 534 U.S. at 221 n.5 ("[T]he plain language of the statute . . . provides fiduciaries with only equitable relief.").

Plaintiffs based their suit on several documents that appeared to promise disability

benefits without such offsets, and they sought the amount of the money deducted. *Id.*

Defendants sought to dismiss these claims by arguing that Plaintiffs had failed to

demonstrate detrimental reliance or prejudice on such documents. *Id.* The Court of

Appeals rejected the argument, noting that reliance or prejudice are irrelevant:

> [W]e are unaware of caselaw to the effect that a plaintiff must show reliance
> or prejudice to enforce terms of a plan. Such a limitation on the reliance or
> prejudice requirement is consistent with the principle that an action under
> ERISA to enforce plan terms sounds in contract, and a plaintiff generally
> need not show equitable factors such as reliance or prejudice to enforce
> contractual terms.

*Id.* at 1213.

Though the case was a beneficiary suing a fiduciary, *Feifer*'s principle—that a suit

to enforce the terms of an ERISA plan does not implicate reliance or prejudice—applies

with equal force when the roles are reversed and the plaintiff is a plan's fiduciary.

Regardless of who is a plaintiff, equitable estoppel, by definition, involves detrimental

reliance and prejudice. Those elements are irrelevant in a breach of contract action—the

equivalent of a claim to enforce the terms of an ERISA plan. And, therefore, a breach of

contract claim cannot sound in estoppel. An estoppel claim must "transcend the plan."

*Sullivan-Mestecky*, 961 F.3d at 99; *see also CIGNA*, 563 U.S. at 440 ("The power to

reform contracts (*as contrasted with the power to enforce contracts as written*) is a traditional power of an equity court, not a court of law[.]" (emphasis added)).[10]

But then how to explain *CIGNA* itself, where in a suit to enforce plan terms the remedy of estoppel was referenced?  The Supreme Court noted that "the District Court's remedy essentially held CIGNA to what it had promised, namely, that the new plan would take from its employees benefits they had already accrued," and suggested this "aspect of the remedy resembles estoppel."  563 U.S. at 441.  Yet notwithstanding the suggestion that remedy of holding CIGNA to plan terms was akin to estoppel, the Court concluded that it "cannot know with certainty which remedy the District Court understood it to be imposing" and remanded for clarification.  563 U.S. at 442, 445.  The District Court chose not to address the availability of estoppel, 925 F. Supp. 2d 242, 251 (D. Conn. 2012), and the Second Circuit affirmed, 775 F.3d 510, 532 (2d Cir. 2014) ("[W]e need not address whether relief would alternatively have been proper pursuant to different equitable remedies such as . . . estoppel.").  Given that the beneficiaries were attempting to enforce the plan as written, estoppel would appear to have been unavailable.  And there appears not to be a single decision—and certainly not one in this

_____

[10] Not all suits to enforce plan terms arise at law, however.  There are exceptions. For example, in *Sereboff v. Mid Atlantic Medical Services, Inc.*, the Supreme Court found that a fiduciary-initiated suit to enforce a lien created by the ERISA plan itself— the right of the plan to any recoveries received by the beneficiary from third parties— was equitable.  547 U.S. 356, 368 (2006) ("Mid Atlantic's action to enforce the 'Acts of Third Parties' provision qualifies as an equitable remedy because it is indistinguishable from an action to enforce an equitable lien established by agreement[.]").  Indeed, section 502(a)(3) itself permits a fiduciary to "obtain other appropriate equitable relief . . . to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii); *Sereboff*, 547 U.S. at 363 ("ERISA provides for equitable remedies *to enforce plan terms*, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable[.]").  That equitable relief is available does not mean, of course, that the claim to enforce the plan is an estoppel claim.

Circuit—where a party seeking to enforce the terms of an ERISA plan, as written, was found to have stated an estoppel claim.

Here, the Plaintiffs are seeking to enforce a promise embodied in the Fund plan itself. Specifically, the SPD, which reflects the plan's terms, states that an employee "must provide the Welfare Fund with timely notice of certain qualifying events," including "[t]he divorce of a covered member" or "[a] beneficiary ceasing to be covered under the Plan as a dependent child of a participant." (SPD at C-13). Plaintiffs allege that Petosa breached this obligation by failing to inform them about his marriage being declared *void ab initio*. (*See* Compl. ¶ 36; SPD at E-13 to -14, F-1, OPI-1). Such a breach cannot give rise to an estoppel claim (either as a violation of a promise to keep Plaintiffs apprised of marital status or as a misrepresentation about marital status). Under Plaintiffs' reading there is no plan ambiguity—Petosa was required to provide updated information about his marriage under this provision, but he failed to do so (or he made a misrepresentation). Instead, Plaintiffs argue that that the plan itself was breached. The harm that accrues from Petosa's failure to disclose his change in marital status is that Plaintiffs paid benefits on behalf of ineligible beneficiaries. The amount of those payments is what Plaintiffs now seek to recover. This is a claim for money damages from a contract breach, not a claim based on a promise or representation external to the plan or a plan ambiguity. It is, therefore, not an estoppel claim. And it is not otherwise a claim that sounds in equity, but instead one that is a breach of contract seeking money

damages.[11]  *E.g.*, *N.Y. Dist. Council of Carpenters Pension Fund v. Savasta*, No. 99-CV-11362, 2005 WL 22872, at *3 (S.D.N.Y. Jan. 4, 2005) ("[P]laintiffs seek the disgorgement of fees paid to defendants for their consulting services; services that plaintiffs claim were rendered in a negligent manner.  Those fees do not constitute identifiable proceeds belonging to the Fund which are in the defendants' possession.  The plaintiff cannot transform the nature of the relief sought by simply designating it as equitable relief in the form of disgorgement of fees.  The fees do not amount to illegal profits or ill-gotten gains derived directly from defendants' alleged culpable acts.  The fees were paid for services rendered by defendants pursuant to their alleged agreement with the Fund.  Thus, the relief sought is actually to recover[] damages from defendants'

---

[11] Using labels and providing no explanation, Plaintiffs also allege that their suit is for "equitable restitution" (Count 2) and for a surcharge.  (Mem. at 7–9).  Neither is correct.  Equitable restitution requires identification of specific monies or res held by the defendant; otherwise, the claim is legal, even sounding in restitution (because it makes plaintiffs whole).  *Knudson*, 534 U.S. at 212–14 ("The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for the benefits they conferred.  The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred on respondents.").  Plaintiffs have not identified such a res.  *See also infra* at 20–22.

Plaintiffs also argue that once Petosa's fraud "is estopped, the form of relief sought herein, namely, restitution of the compensatory loss of $265,786.10 in improperly paid medical claims should be the form of surcharge relief recoverable by Plaintiffs[.]"  (Mem. at 9).  But the "surcharge" remedy is available not for a suit against a beneficiary, but only as against the trustee or fiduciary, because it is based on a breach of fiduciary duty.  *CIGNA*, 563 U.S. at 442 ("The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of the duty imposed upon that fiduciary.  Thus, insofar as an award of make-whole relief is concerned, the fact that the defendant in this case . . . is analogous to a trustee makes a critical difference." (internal citations omitted)).  A beneficiary like Petosa has no such duty to the plan.  *See also Surcharge*, Black's Law Dictionary (11th ed. 2019) ("The amount that a court may charge a fiduciary that has breached its duty.").

alleged breach of contract.  Defendants' entitlement to those funds hinge on whether

defendants breached their purported contract by not providing proper actuarial

services.  Hence, the nature of the claim is one at law, and simply seeks to impose

personal liability on defendants to recover monetary damages albeit in the form of fees

paid to them by the Fund.  Such an action cannot be maintained pursuant to § 502(a)(3)

of ERISA.").

B.  Nature of the Remedy Sought

"[S]ection 502(a)(3) requires *both* that the 'basis for [the] claim' *and* the 'nature

of the recovery' sought be equitable."  *Coan v. Kaufman*, 457 F.3d 250, 264 (2d Cir.

2006) (alteration in original) (quoting *Sereboff*, 547 U.S. at 363); *e.g.*, *id.* ("Even if

breach of fiduciary duty is an equitable *claim*, therefore, *remedies* for breach of

fiduciary duty do not constitute 'equitable relief' under section 502(a)(3) unless the

plaintiff seeks a 'categor[y] of relief that [was] typically available in equity.'" (alterations

in original) (quoting *Mertens*, 508 U.S. at 256)).  Even if the basis for Plaintiffs' claim to

enforce the plan is equitable, the nature of the remedy sought is not.

"[M]oney damages are unavailable under section 502(a)(3) when the plaintiff

does 'not seek to recover a particular fund from the defendant,'" *id.* at 263 (quoting

*Sereboff*, 547 U.S. at 363), because such a remedy is not equitable, *see Knudson*, 534

U.S. at 211–14.  ("[A] plaintiff [in a court of equity] could seek restitution in equity,

ordinarily in the form of a constructive trust or an equitable lien, where money or

property identified as belonging in good conscience to the plaintiff could clearly be

traced to particular funds or property in the defendant's possession."); *see also, e.g.*, *N.*

*Am. Coal Corp. v. Roth*, 395 F.3d 916, 917 (8th Cir. 2005) (per curiam) ("It was thus

proper for the district court to impose a constructive trust over the overpaid benefits . . .

and a tracing of any portion of the funds no longer in appellants' possession or control. However, the district court's award of restitution of a sum certain, and its finding of personal liability constituted legal remedies not authorized by section [502](a)(3).”). Here, Plaintiffs' suit attempts to collect them by obtaining a personal judgment against Petosa's general assets, not against a specific or particular fund.  That remedy is legal, not equitable.  *Union Lab. Life Ins. Co. v. Olsten Corp. Health & Welfare Benefit Plan*, 617 F. Supp. 2d 131, 145 (E.D.N.Y. 2008) (“Accordingly, because plaintiff does not identify any specific assets or funds in defendants' possession, but rather seeks recovery from defendants' general assets, its claim is not for restitution at equity but rather, is a claim, as in *Knudson*, that defendant is contractually obligated to pay funds to plaintiff.”).

Separate and apart, a remedy is not equitable when a defendant “‘never possessed the funds in question.’”  *Coan*, 457 F.3d at 264 (quoting *Periera v. Farace,* 413 F.3d 330, 339 (2d Cir. 2005)).  Plaintiffs never paid Petosa the monies they now seek to recover. The payments were made presumably to his family members or directly to the medical providers (the Complaint does not say).  Indeed, the Complaint alleges that Plaintiffs request reimbursement of $265,786.10 of medical expenses “*paid . . . on behalf of*” Sally and the stepchildren.  (Compl. ¶¶ 28, 30, 32, 38, 44 (emphasis added)).  In either case, Petosa never had the funds paid by the Fund, and an attempt to recover them from him now does not seek an equitable remedy.  *E.g.*, *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003) (“We agree with the District Court that the Plaintiffs have not alleged sufficient facts to make out a claim for restitution.  The moneys sought by the Plaintiffs were never in Savasta's possession; rather, they are simply consequential damages resulting from Savasta's alleged negligence.”).

Because Plaintiffs have not alleged claims or sought relief that would traditionally be available in equity, Plaintiffs cannot recover under ERISA section 502(a)(3). *Montanile*, 577 U.S. at 142. Therefore, Plaintiffs' motion for default judgment must be denied. *Cont'l Airlines, Inc. 401(k) Sav. Plan v. Almodovar-Roman*, No. 16-CV-5766, 2018 WL 2357754, at *4 (D.N.J. May 24, 2018) ("By seeking equitable relief, Plaintiff can only request the imposition of an equitable lien over a specific account, identifiable to and in the possession of Almodovar-Roman. By failing to demonstrate where the funds are even located, it would be impossible for the Court to ensure that the requested judgment in the amount of $122,077.23 is not a legal remedy against Almodovar-Roman's general assets, rather than an equitable lien over property that belongs in 'good conscience' to the Defendants. This is why default judgment cannot be entered as requested.").

*      *      *

There are two separate and independent deficiencies in Plaintiffs' claims that would also result in denial of the motion for default judgment. *First*, Plaintiffs have not alleged a breach of the plan terms. Instead, they have merely appended the SPD to their motion and cited portions of the SPD in support of their argument. Plaintiffs have nowhere referenced the actual language of the plan. The Court cannot determine whether Petosa has breached the terms of the plan without reviewing its terms, and the SPD cannot stand in place of the plan. *See, e.g.*, *CIGNA*, 563 U.S. at 437 ("[W]e cannot agree that the terms of statutorily required plan summaries (or summaries of plan modifications) necessarily may be enforced . . . as the terms of the plan itself.").

*Second*, even if it were possible to plead an equitable remedy based on breach of the Fund's SPD, Plaintiffs' claims fail on their own terms. The SPD provides a list of

"qualifying events" about which a beneficiary must notify the Fund.  (SPD at C-13).  The only event relevant to this action is a divorce—a beneficiary must provide notice upon "[t]he divorce of a covered member from his or her spouse."  *Id.*  Failure to provide that notice triggers the indemnification obligation for any monies improperly remitted.  But here, Petosa was not divorced—his marriage was declared *void ab initio*.  Perhaps the SPD should have been written to require notification to require notification of any change in marital status—but it does not.  The Complaint does not allege that Petosa was divorced and failed to notify the plan; instead, it suggests that he did not give notice of a different event, his change in marital status, (*see* Compl. ¶¶ 21, 27), one for which the SPD is silent.  Because there is no requirement that Petosa appears to have been breached, there is not a basis to find a breach of the SPD, and no basis to enter judgment against him.[12]

---

[12] It may be that Petosa made a misrepresentation about his marriage when becoming a plan participant or otherwise violated other plan terms.  But such breaches are not alleged here.

<u>CONCLUSION</u>

For the reasons stated above, it is respectfully recommended that the motion for default judgment be denied. Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within fourteen (14) days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotation omitted)).


SO ORDERED.

*/s/ Sanket J. Bulsara*   July 19, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York